**Electronically Filed
Supreme Court
SCCQ-17-0000474
13-NOV-2019
08:02 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

WILLIAM R. HANCOCK, individually and as Trustee of the
HANCOCK AND COMPANY, INC. PROFIT SHARING TRUST,
under trust instrument April 3, 1983, Plaintiff-Appellee,

vs.

KULANA PARTNERS, LLC, a Hawai'i limited liability company;
FIDELITY NATIONAL TITLE & ESCROW OF HAWAII, INC.,
a Hawai'i Corporation, Defendants-Appellants.

_____

SCCQ-17-0000474

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I
(CIVIL NO. 13-00198 DKW-RLP)

NOVEMBER 13, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

In a federal court lawsuit, a grantor asserts that an

escrow company's alleged deletion of an easement from the

property description attached to a deed he executed renders the deed a "forged deed" that is void ab initio. The escrow company and the grantee, on the other hand, assert that the grantor's claim sounds in fraud and is subject to, and barred by, a statute of limitations. They assert that the statute of limitations has run because the grantor is deemed to have had constructive notice of the allegedly modified deed upon its recordation.

The United States District Court for the District of Hawai'i ("district court") certified the following questions to this court:

> 1. Whether a claim relating to a forged deed is subject to the statute of limitations for fraud?
>
> 2. Whether the recording of a deed provides constructive notice in an action for fraud?

As it is unclear whether, under Hawai'i law, the underlying case involves a claim relating to a deed that is void ab initio or a claim that is subject to a statute of limitations, we reframe[1] the questions as follows:

> 1. Under Hawai'i law, when is a deed void ab initio for fraud, such that a claim challenging the validity of the deed is not subject to a statute of limitations?
>
> 2. Under Hawai'i law, what statute of limitations applies to a claim that a deed was procured by fraud of the type that does not render it void ab initio?

---

[1] This court may "reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties." Allstate Ins. Co. v. Alamo Rent-A-Car, Inc., 137 F.3d 634, 637 (9th Cir. 1998) (citations and quotation marks omitted).

3. Under Hawai'i law, when does the statute of limitations begin to run on a grantor's claim that a deed was procured by fraud of the type that does not render it void ab initio: upon recordation of the deed or at some other point in time?[2]

To answer the first modified certified question, we hold that, under Hawai'i law, a deed is void ab initio for fraud, such that a claim challenging the validity of the deed is not subject to a statute of limitations, when (1) a deed is forged, meaning it has been falsely made, completed, endorsed, or altered with intent to defraud; or (2) a deed has been procured by "fraud in the factum," such as when a person is fraudulently deceived about the nature of a document that has been signed, as when a document is surreptitiously substituted for signature.[3] Gonsalves v. Ikei, 47 Haw. 145, 384 P.2d 300 (1963); Adair v. Hustace, 64 Haw. 314, 640 P.2d 294 (1982) (abrogated on other grounds by Ass'n of Apartment Owners of Royal Aloha v. Certified Mgmt., 139 Hawai'i 229, 386 P.3d 866 (2016)).[4]

---

[2] As the property at issue was not Land Court property, we also do not address the effect of Hawai'i Revised Statutes § 501-106.

[3] Under Hawai'i law, a party alleging fraud must prove fraud by "clear and convincing evidence." See, e.g., Iddings v. Mee-Lee, 82 Hawai'i 1, 14, 919 P.2d 263, 276 (1996) ("[T]he clear and convincing standard is typically used in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant.") (citation omitted).

[4] We note that the courts are split as to whether a void deed can be ratified. According to 26A C.J.S. Deeds § 68, "most courts hold that an instrument that is void by reason of defective execution may be ratified by the grantor, subject, however, to certain limitations as to the manner of ratification, as, for example, by a reacknowledgement, or the execution or a confirmation deed, or by a will, or by an authorization under seal to

(continued. . .)

3

To answer the second modified certified question, we hold that, under Hawai'i law, the six-year "catch-all" statute of limitations under Hawai'i Revised Statutes ("HRS") § 657-1(4) (2016) applies to a claim that a deed was procured by fraud of the type that does not render it void ab initio, e.g., fraud in the inducement and constructive fraud.

To answer the third modified certified question, we hold that the statute of limitations begins to run on a grantor's claim that a deed was procured by fraud of the type that does not render it void ab initio when the grantor discovers, or reasonably should have discovered, the existence of the claim or the identity of the person who is liable for the claim.

---

(continued. . .)
complete and deliver the instrument, where such as is performed." (footnotes omitted). Another possible manner of ratifying an unauthorized modification of the deed is the acceptance of benefits under the deed with full knowledge of the unauthorized act. See, e.g., Brock v. Yale Mortg. Corp., 287 Ga. 849, 855 (2010) (explaining that a person whose name is forged on a deed may later ratify the unauthorized act where the person, with full knowledge of all the material facts, accepts the benefits of the unauthorized act; a person seeking to cancel a forged deed in equity must tender to the grantee any consideration received under the forged deed); Erler v. Creative Finance, 203 P.3d 744 (Mont. 2009) (collecting cases from Florida, Georgia, and the United States Court of Appeals for the Eighth Circuit permitting ratification of void deeds and holding that "ratification of a forged deed may properly be considered in equity"). In this case, we need not and do not address whether, under Hawai'i law, a void deed could be ratified.

26A C.J.S. Deeds § 68 goes on to state, however, "Some courts have held that a void deed, such as one that has been forged, cannot be ratified." See, e.g., Beazley v. Turgeon, 772 S.W.2d 53 (Tenn. Ct. App. 1988) (affirming trial court's decision voiding a deed procured by forgery and a falsified notary acknowledgement and holding there could be no ratification of the void deed because the grantor had not agreed to the exact terms set forth in the transaction involving the forged deed); Bellaire Kirkpatrick Joint Venture v. Loots, 826 S.W.2d 205, 210 (Tex. App. 1992) ("Because a forged deed is void ab initio, it is not subject to being revived by mere ratification."). Again, we need not and do not address this issue.

## II. Factual Background

### A. District Court Proceedings

This case involves a 2002 sale of real property from William R. Hancock ("Hancock") to Kulana Partners, LLC ("KPL"). Hancock had allegedly agreed to include in the conveyance documents an easement in favor of his neighbors, Robert and Esther Grinpas (the "Grinpases"). The recorded conveyance documents, however, did not include the easement.

In 2007, the Grinpases sued Hancock and KPL in the Circuit Court of the Fifth Circuit ("circuit court"). The circuit court rendered judgment in favor of the Grinpases and against Hancock, and the appeal has been before the ICA twice. Grinpas v. Kapaa 382, CAAP-14-0000870.

In 2013, in the United States District Court for the District of Hawaiʻi ("district court"), Hancock, individually and as trustee of the Hancock and Company, Inc. Profit Sharing Trust, sued KPL and the escrow company for the sale, Fidelity National Title & Escrow of Hawaiʻi, Inc. ("Fidelity"). He alleged that, after he executed the deed, Fidelity fraudulently modified it to delete the Grinpases' easement, then recorded the deed.

Hancock elaborated that, in August 2002, he reviewed two deeds at Fidelity's Kapaʻa office: a warranty deed conveying the property from Hancock, individually, to Hancock as trustee, and

a trustee's deed conveying the property from Hancock as trustee to KPL ("Trustee Deed"). Hancock alleged that he "identified a limitation in the 'Subject To' section of the Trustee Deed in Paragraph 12 that made the conveyance subject to 'Any rights of the parties in possession of a portion of, or all of, said land, which rights are not disclosed by the public record.'" He alleged, "But for the existence of this in the 'Subject To' section," he "would not have executed the deed." Hancock went on to allege that Paragraph 16 of the Trustee Deed described an easement in the north corner of the property "at or near the location of the Grinpas Easement." Hancock further alleged that days later, the two deeds were transmitted from Fidelity to its attorney.

About a week later, on August 26, 2002, an internal memorandum between Fidelity's "Loretta" and "Jeannette" advised, "WE NEED TO REPLACE THE SUBJECT TO PAGE ON BOTH OF THE DEEDS . . . THE TOGETHER WITH PARAGRAPH (ON THE TOP) IS MISSING. I BELIEVE THAT YOU ALREADY HAVE THE DEED AND I HAVE IT SET UP FOR RECORDING ON WEDNESDAY." To Hancock, this internal memorandum reflected Fidelity's "fraudulent[]" "intent to alter [Hancock's] executed and notarized Deeds" to "remove the easement at paragraph 16 and paragraph 12 regarding unrecorded interests" "without the knowledge or consent of Mr. Hancock." According to Hancock, the altered trustee's deed was recorded in the Bureau

of Conveyances[5] on August 28, 2002. Hancock alleged that "Fidelity is a fiduciary with a duty to disclose its own malfeasance." He also asserted that, as a result of "fraudulent concealment by Fidelity and KPL," he "did not learn of the forged deed until 2013." Relevant to the certified questions before this court, Count I of Hancock's Complaint sought a declaration that the Trustee Deed was void as "an altered instrument and . . . a forgery," and to have the order declaring the deed void recorded in the Bureau of Conveyances.

KPL then filed a motion to dismiss pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and (6), and Fidelity filed its own motion for judgment on the pleadings pursuant to FRCP Rule 12(c). Both KPL and Fidelity characterized Hancock's Complaint as an end-run around the state court judgment against Hancock in the Grinpas case. Both argued that the allegedly modified deed was publicly recorded in the Bureau of Conveyances in 2002; therefore, Hancock had constructive notice of any fraudulent conduct at that time.[6] Both KPL and Fidelity further argued that the applicable statute of limitations was the six-

---

[5] According to Hancock, the deed was recorded only in the Bureau of Conveyances and not in Land Court.

[6] Fidelity also pointed out that Hancock had already testified in the Grinpas case that the omission of the easement in the deed was "a mistake." In a later deposition (taken in 2013), Hancock testified that he realized in 2007 that there was no express mention of the easement in the Trustee's Deed. Therefore, Fidelity argued, Hancock had actual knowledge of the facts giving rise to his claim for relief in 2007, if not earlier, or was at least on inquiry notice.

year statute of limitations found in HRS § 657-1, which began to run in 2002 upon recordation of the deed; therefore, Hancock's federal complaint, filed over eleven years after the statute of limitations had begun to run, was time-barred.

In his opposition to KPL's and Fidelity's motions, Hancock appended as exhibits the 2002 Trustee's Deed that Hancock said he signed, which included paragraphs 12 and 16, as well as the 2002 Trustee's Deed that was actually recorded in the Bureau of Conveyances, which is missing paragraphs 12 and 16.  He also appended as an exhibit the internal memorandum between two Fidelity employees referencing a missing provision in the deed.

In both of Hancock's memoranda in opposition, he made the same points.  First, as to the statute of limitations, Hancock argued that there is no statute of limitations on a claim that a forged deed is void.  Hancock quoted the following passage from Palau v. Helemano Land Co., 22 Haw. 357, 361 (Haw. Terr. 1914), to support his position:  "The complainant being out of possession is in position to, at any time, bring an action of ejectment and therein litigate the title to the land, including the question of the alleged forgery.  A forged deed is void and passes no title."

Second, as to the argument that the recordation of the Trustee's Deed provided Hancock with constructive notice of any fraud therein, Hancock counter-argued that "a forged instrument

8

and its record are utterly void, and its record is not constructive notice," citing to <u>Mosley v. Magnolia Petroleum Co.</u>, 114 P.2d 740 (N.M. 1941).

Hancock also asked the district court to look to the Hawai'i Penal Code's definitions of "[f]alsely alter," "[f]orged instrument," and "utter" to determine whether forgery occurred in this case.

KPL and Fidelity separately filed reply memoranda in support of each's motions. Both asserted that Hancock misconstrued the <u>Palau</u> decision. Fidelity asserted that <u>Palau</u> was "decided long before the rise of modern pleading standards" (*i.e.*, the merger of law and equity) and "dealt with the central question of whether a plaintiff challenging the validity of two deeds was required to proceed on an action at law or an action in equity." Fidelity argued that the <u>Palau</u> court then held that the plaintiff did not have to bring an action in equity first in order to bring an action in law when it stated that the plaintiff "is in a position to, at any time, bring an action of ejectment," which was an action at law. Fidelity contended that "at any time" in <u>Palau</u> referred "not to a statute of limitations (or lack thereof), but rather the availability of a particular form of action." KPL interpreted <u>Palau</u> similarly.

Further, KPL argued that "<u>Palau</u> demonstrates that claims of forged deeds sound in fraud," as the complainant in that case

"requested that the deeds in question be declared 'fraudulent and void.'"  Therefore, KPL reiterated that the six-year statute of limitations for fraud (HRS § 657-1(4)) applied.

KPL and Fidelity also argued that Hancock had constructive notice of any alleged fraud upon the recordation of the Trustee's Deed with the Bureau of Conveyances in 2002.  KPL noted that there is no Hawai‘i case holding that a recorded document serves as constructive notice regarding actions predicated on fraudulent conduct when the public record itself constitutes evidence of the fraud; instead, KPL referred the court again to cases from other jurisdictions for this point of law.  KPL and Fidelity did, however, distinguish Mosley, the sole case Hancock relied upon, as addressing "constructive notice for subsequent purchasers for value," not constructive notice for purposes of determining whether the statute of limitations had begun to run.

The district court granted KPL's motion to dismiss and Fidelity's motion for judgment on the pleadings.  The district court first stated that Hancock's claims "unmistakably sound in fraud"; therefore, HRS § 657-1(4)'s six-year statute of limitations applied.  The district court footnoted its agreement with KPL and Fidelity's interpretation of the Palau decision, noting that the case "addressed the availability of an action in equity or at law, and did not speak to whether a limitations

10

period is applicable" to forged deed claims.  The district court also rejected Hancock's argument that Hawai'i Penal Code definitions of forgery applied in this case.

The district court then acknowledged that there were no Hawai'i cases addressing whether the recording of a deed serves as constructive notice for purposes of a fraud claim.  It went on, however, to note that Hawai'i appellate courts have "recognized that the recording of a document gives notice to the general public of the conveyance," citing Markham v. Markham, 80 Hawai'i 274, 281, 909 P.2d 602, 609 (App. 1996) (holding that the "central purpose of recording a conveyance of real property is to give notice to the general public of the conveyance and to preserve the recorded instrument as evidence").  The district court therefore charged Hancock with constructive notice of the contents of the Trustee's Deed upon the date it was recorded, August 28, 2002, and held that Hancock's 2013 Complaint's fraud claims were time-barred by the six-year statute of limitations.  The district court also rejected Hancock's assertion that he did not discover the fraudulent modification of the deed until 2013 due to KPL and Fidelity's fraudulent concealment.

Judgment was entered in favor of KPL and Fidelity.  Hancock appealed the judgment to the Ninth Circuit.

11

**B.  Ninth Circuit Proceedings**

The Ninth Circuit issued a memorandum opinion stating that "a clarification of Hawaii law would resolve this case."  The Ninth Circuit then vacated the district court's judgment and remanded the case to the district court with instructions to certify two questions to this court.  The district court issued an order so doing, and this court agreed that the questions were amenable to answer.

## III.  Certified Questions

This court may "answer, in its discretion . . . any question or proposition of law certified to it by a federal district or appellate court if the supreme court shall so provide by rule."  HRS § 602-5 (2016).  Hawai'i Rules of Appellate Procedure Rule 13(a) (2000), on certified questions, provides the following:

> When a federal district or appellate court certifies to the Hawai'i Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawai'i that is determinative of the case and that there is no clear controlling precedent in the Hawai'i judicial decisions, the Hawai'i Supreme Court may answer the certified question by written opinion.

A question of law presented by a certified question is reviewable de novo under the right/wrong standard of review.  Francis v. Lee Enters., Inc., 89 Hawai'i 234, 236, 971 P.2d 707, 709 (1999) (citation omitted).

### IV.  Discussion

In their briefing of the issues before this court, the parties largely[7] reassert the arguments made before the district court.  As there is no need to reiterate these arguments, we proceed directly to answering the modified certified questions.

**A.   A deed is void ab initio for fraud, such that a claim challenging the validity of the deed is not subject to a statute of limitations, when (1) a deed is forged; or (2) a deed has been procured by fraud in the factum.**

The first modified certified question asks, "Under Hawai'i law, when is a deed void ab initio for fraud, such that a claim challenging the validity of the deed is not subject to a statute of limitations?"  A survey of our case law reveals that we have recognized void deed claims in two instances where fraud has been perpetrated upon a grantor:  (1) a deed is forged, meaning the deed has been falsely made, completed, endorsed, or altered with intent to defraud; and (2) where the deed itself is procured due to fraud in the factum, such as when a person is

---

[7]    Hancock, however, newly raises the argument that HRS § 456-6(b) (2013), governing notaries, contains no statute of limitations, as follows:

> For the official misconduct or neglect of a notary public or breach of any of the conditions of the notary's official bond, the notary and the surety on the notary's official bond shall be liable to the party injured thereby for all the damages sustained.  The party shall have a right of action in the party's own name upon the bond and may prosecute the action to final judgment and execution.

There is no allegation in Hancock's complaint that a notary fraudulently modified the deed; therefore, this argument has been waived.

fraudulently deceived about the nature of the document that has been signed, as when a document is surreptitiously substituted for signature. Under our case law, deeds executed as a result of this type of fraud are void ab initio. Palau, 22 Haw. at 361 ("A forged deed is void and passes no title."); Iaea v. Iaea, 59 Haw. 648, 650, 586 P.2d 1015, 1017 (1978) (per curiam) (affirming the circuit court's judgment that decreed a forged deed to be "null and void"); Kapiolani v. Mahelona, 9 Haw. 676, 678, 680-81 (Haw. Rep. 1895) (affirming the circuit court's decree cancelling a deed containing the forged signature of King Kalakaua); Gonsalves, 47 Haw. at 147 ("The fraud perpetrated on [the grantor] went to the nature of the document and not mere details, and therefore, all of the documents were void. . . .").

First, a deed is void where it is forged, meaning it has been falsely made, completed, endorsed, or altered with intent to defraud.[8] See, e.g., Iaea, 59 Haw. at 650, 586 P.2d at 1017

---

[8] This definition of forgery is drawn from HRS § 708-850, which defines a "forged instrument" as "a written instrument which has been falsely made, completed, endorsed, or altered." HRS § 708-852, titled "Forgery in the second degree," makes forgery of a deed a class C felony. This court has previously looked to the criminal definition of "forgery" in the civil context. See Maui Fin. Co. v. Han, 34 Haw. 226 (Haw. Terr. 1937). In that case, Sarah Hong, the wife of Hong Chang Sok, signed Sok's name as an endorser on a promissory note while Sok was not present. 34 Haw at 228. Sok could not read or write English, but Sarah could. Id. She waited until he returned home for his approval, but Sok did not say anything. 34 Haw. at 229. The Territorial Supreme Court held that Sarah did not commit forgery because she was entirely lacking in the "specific intent to deceive another and prejudice him in some right." Id. Furthermore, the Territorial Supreme Court held that Sok ratified his wife's action when he remained silent after she sought his approval of her act. Id.

(affirming the trial court's finding that a deed was forged where the plaintiff's husband signed her name on it without her consent); Palau, 22 Haw. at 358 (remanding allegation that two different grantors' signatures on deeds were fabricated); Kapiolani, 9 Haw. 676 (affirming the circuit court's determination that a deed purportedly from King Kalakaua was not signed by him).

Second, a deed is void where it is procured by fraud in the factum. Gonsalves, 47 Haw. at 147, 384 P.2d at 302. Fraud in the factum "goes to the nature of the document itself," Adair, 64 Haw. at 320 n.4, 640 P.2d at 300 n.4, where, for example, a grantor signs a deed fraudulently represented to be a lease. See also Gonsalves, 47 Haw. 145, 384 P.2d at 301 (affirming trial court's order denying specific performance of a lease, bill of sale, and consent to mortgage, all of which were fraudulently procured by a real estate agent who did not disclose the nature of the documents to the grantor, who could not read English). In these circumstances, deeds are void ab initio and not subject to any statute of limitations.[9]

---

[9] We note, however, that this court previously left open the possibility that the defense of laches could bar a claim that a deed was procured through fraud in the factum. Adair, 64 Haw. at 325 ("[W]e have no doubt that laches may preclude an action to cancel a deed for fraud [in the factum] under appropriate circumstances."). We more recently held that laches is a defense at law and at equity. Association of Apartment Owners of Royal Aloha, 139 Hawai'i at 231, 386 P.3d at 868. As the issue is not before us, we also do not address whether or not adverse possession would also apply in favor of a

(continued. . .)

Other jurisdictions have similarly held that a claim that a deed is void is not subject to a statute of limitations.  For example, the Court of Appeals of New York stated, "For over a century, . . . a forged deed has been treated in New York as void ab initio. . . [A] statute of limitations cannot validate what is void at its inception.  Therefore, a void deed is not subject to a statutory time bar."  Faison v. Lewis, 32 N.E.3d 400, 407 (N.Y. 2015).  The Faison court went on to observe that such a rule is "the prevailing approach in other jurisdictions," 32 N.E.3d at 405, citing, inter alia, Moore v. Smith-Snagg, 793 So.2d 1000, 1001 (Fla. Dist. Ct. App. 2015) (per curiam) ("[T]here is no statute of limitations in respect to the challenge of a forged deed, which is *void ab initio*."); and Thompson v. Ebbert, 160 P.3d 754, 757 (Idaho 2007) ("Because the lease agreement was void ab initio, it could be challenged at any time. . . . [The plaintiff's] action to declare the lease agreement void [due to a lack of authority to lease a portion of the property] was not time barred.").

---

(continued. . .)
third party who is a bona fide purchaser of a property whose chain of title contained a deed procured by fraud in the factum.

16

**B. The six-year catch-all statute of limitations under HRS § 657-1(4) applies to a claim that a deed was procured by fraud of the type that does not render it void ab initio, e.g., fraud in the inducement and constructive fraud.**

The second modified certified question asks, "Under Hawai'i law, what statute of limitations applies to a claim that a deed was procured by fraud of the type that does not render it void ab initio?"

In Hawai'i, there are three types of fraud recognized in the conveyance context: (1) fraud in the factum, (2) fraud in the inducement, and (3) constructive fraud. Aames Funding Corp. v. Mores, 107 Hawai'i 95, 103, 110 P.3d 1042, 1050 (2005). First, fraud in the factum "is fraud which goes to the nature of the document itself." Id. As stated, supra, Section IV.A., a deed procured through fraud in the factum is void ab initio, and a claim challenging the validity of such a deed is not subject to a statute of limitations. Second, fraud in the inducement is "fraud which induces the transaction by misrepresentation of motivating factors." 107 Hawai'i at 103-04, 110 P.3d at 1050-51. Third, constructive fraud is "characterized by the breach of fiduciary or confidential relationship." 107 Hawai'i at 104, 110 P.3d at 1051.

Under Hawai'i precedent, the latter two fraud claims are governed by HRS § 657-1(4). That statute states, "The following actions shall be commenced within six years next after the cause

17

of action accrued, and not after: . . . Personal actions[10] of any nature whatsoever not specifically covered by the laws of the State."

This court has applied HRS § 657-1(4) to claims involving fraud. See, e.g., Au, 63 Haw. 210, 626 P.3d 173 (applying HRS § 657-1(4) to plaintiffs' claims that defendants fraudulently and/or negligently misrepresented to her that the home she bought from them did not have a water leak); Eastman v. McGowan, 86 Hawai'i 21, 946 P.2d 1317 (1997) (applying HRS § 657-1(4) to plaintiffs' claims that defendant fraudulently misrepresented to them that she would reconvey real property to them); cf. Small v. Badenhop, 67 Haw. 626, 701 P.2d 647 (1985) (engaging in a laches analysis, based upon finding that the analogous statute of limitations would be the six-year statute of limitations found in HRS § 657-1, to a claim involving constructive fraud). Therefore, we answer the second certified question, as modified, as follows:  HRS § 657-1(4)'s six-year statute of limitations applies to a claim that a deed has been procured through fraud

---

[10]     A "personal action" is
            an action brought for the recovery of personal property,
            for the enforcement of a contract or to recover for its
            breach, or for the recovery of damages for the commission
            of an injury to the person or property; an action for the
            recovery of a debt, or damages from the breach of contract,
            or for a specific personal chattel, or for the satisfaction
            in damages for injury to the person or property.
Au, 63 Haw. at 217, 626 P.2d at 179 (citations omitted).

of the kind that does not render it void ab initio, e.g., fraud in the inducement and constructive fraud.

**C.   A plaintiff grantor's claim for fraudulent modification of an executed deed accrues when the plaintiff grantor discovers, or reasonably should have discovered, the existence of the claim or the identity of the person who is liable for the claim.**

The third modified certified question asks, "Under Hawai'i law, when does the statute of limitations begin to run on a grantor's claim that a deed was procured by fraud of the type that does not render it void ab initio:  upon recordation of the deed or at some other point in time?"  There are conflicting decisions from other states as to whether the recordation of a conveyance document charges a party to a conveyance with constructive notice of any alleged fraud.  See, e.g., 152 A.L.R. 461, "Public Records as constructive notice as regards actions predicated upon fraudulent misrepresentation or concealment, so as to start the running of the statute of limitations against the bringing of such action" (1944 & Cum. Supp.).  On one hand, some courts hold that, "since public records . . . of conveyances . . . are open to the public, everyone is bound by notice of their contents," including parties to the conveyance themselves.  Id. (citing, e.g., Blum v. Elkins, 369 S.W.2d 810, 813-14 (Tex. App. 1963) (charging grantor with constructive notice of the consideration paid for the sale of grantor's property, once the deed was recorded)).

On the other hand, "[o]ther courts take the view that a public record of a conveyance of land being meant for the protection of possible subsequent purchasers or encumbrancers, only they – and not the innocent party to a fraudulent transaction – are bound thereby." 152 A.L.R. 461. These courts reason that once a grantor has made a conveyance, the grantor is under no duty to examine the property records to see if fraud has been committed. See 152 A.L.R. 461 (citing, e.g., Gates v. Kansas Farmers' Union Royalty Co., 111 P.2d 1098, 1103-04 (Kan. 1941) ("[N]either is the recording of a deed executed by the owner of a property constructive notice to the grantor of the fact that there had been fraudulently included in the deed a description of property other than that which the grantor had intended to convey so as to start the running of the statute of limitations. . . . Normally an owner of the property who executes a deed therefor has no occasion to examine the record after the deed is recorded, to ascertain if a fraud has been committed upon him.")).

Some courts further consider whether the one perpetrating the fraud is in a fiduciary position with respect to the defrauded party. 152 A.L.R. 461. In cases where a fiduciary relationship exists, there is a "relaxed" duty to search property records for fraud. Id. (citing, e.g., Hutto v. Knowlton, 108 P. 825, 825 (Kan. 1910) ("Where fiduciary

20

relations exist requiring the disclosure of the true state of facts, there is no reason to anticipate unfaithfulness, and the obligation to search the record is relaxed.")).

Hawai'i's appellate courts have not yet decided whether the recordation of a conveyance document charges a party to the conveyance with constructive notice of fraud for statute of limitations purposes. The Hawai'i appellate cases concerning the recordation of documents as providing constructive notice deal primarily with constructive notice to subsequent purchasers or encumbrancers. See, e.g., Lathrop v. Sakatani, 111 Hawai'i 307, 310, 141 P.3d 480, 483 (2006) (recordation of a lis pendens provides constructive notice of a lawsuit to third parties); Ass'n of Apartment Owners of Kukui Plaza v. City & Cty. of Honolulu, 7 Haw. App. 60, 70, 742 P.2d 974, 981 (1987) (recordation of leases placed buyers on notice that City had the right to acquire parking areas for municipal parking); Harada v. Ellis, 4 Haw. App. 439, 443, 667 P.2d 834, 838 (1983) (recordation of lis pendens provided constructive notice of counterclaim to prospective purchaser of the property).

In this case, we agree with Hancock that recordation of a deed does not, as a matter of law, provide constructive notice to the grantor that the deed was fraudulently modified after execution. It is true that recordation of a deed provides constructive notice to subsequent purchasers and encumbrancers

21

of the contents of the deed.  See Markham, 80 Hawai'i at 281, 909 P.2d at 609 (holding that the "central purpose of recording a conveyance of real property is to give notice to the general public of the conveyance and to preserve the recorded instrument as evidence").  We have long held, however, that "the recording of a deed is notice, not, as it is sometimes inaccurately said to the whole world, but merely to those who are bound to search the record."  In re Nelson, 26 Haw. 809, 820 (Haw. Terr. 1923).  A grantor is ordinarily not duty bound to search the record of the completed conveyance to determine whether the documents filed were fraudulently modified.

Further, as Hancock points out, Fidelity occupied a fiduciary role with respect to the parties to the conveyance.  See DeMello v. Home Escrow, Inc., 4 Haw. App. 41, 47, 659 P.2d 759, 763 (1983) ("The general rule is that an escrow depository occupies a fiduciary relationship with the parties to the escrow agreement or instructions[.]").  As such, Fidelity was required to "comply strictly with the provisions" of the parties' escrow agreement or instructions.  Id.  Hancock correctly alleges he should have been able to rely on Fidelity to faithfully record the deed he executed.

The question then becomes at what point does a fraudulent modification claim accrue, for statute of limitations purposes?  Hancock asserts that any statute of limitations applicable to

22

his case would be tolled due to Fidelity's alleged act of removing two paragraphs from the deed he executed without disclosing the change to him.  As such, Hancock claims fraudulent concealment of his cause of action.  See Au, 63 Haw. at 215-16, 626 P.2d at 178 ("Fraudulent concealment involves the actions taken by a liable party to conceal a known cause of action.").

HRS § 657-20 (2016), titled "Extension by fraudulent concealment," provides a six-year statute of limitations for actions under HRS chapter 657, commencing when the plaintiff discovers, or reasonably should have discovered, the claim or the identity of the person who is liable for the claim:

> If any person who is liable to any of the actions mentioned in this part . . . fraudulently conceals the existence of a cause of action or the identity of any person who is liable for the claim from the knowledge of the person entitled to bring the action, the action may be commenced at any time within six years after the person who is entitled to bring the same discovers or reasonably should have discovered, the existence of the cause of action or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

The statute makes clear that the statute of limitations for bringing a fraudulent modification claim accrues when the plaintiff discovers, or reasonably should have discovered, the existence of the claim or the identity of the person who is liable for the claim.

### V.   Conclusion

To reiterate, the three questions before this court, as reframed, are as follows:

> 1.   Under Hawai'i law, when is a deed void ab initio for fraud, such that a claim challenging the validity of  the deed is not subject to a statute of limitations?
>
> 2.   Under Hawai'i law, what statute of limitations applies to a claim that a deed was procured by fraud of the type that does not render it void ab initio?
>
> 3.   Under Hawai'i law, when does the statute of limitations begin to run on a grantor's claim that a deed was procured by fraud of the type that does not render it void ab initio:  upon recordation of the deed or at some other point in time?

To answer the first modified certified question, we hold that, under Hawai'i law, a deed is void ab initio for fraud, such that a claim challenging the validity of the deed is not subject to a statute of limitations, when (1) a deed is forged, meaning it has been falsely made, completed, endorsed, or altered with intent to defraud; or (2) a deed has been procured by fraud in the factum, such as when a person is fraudulently deceived about the nature of the document that has been signed, as when a document is surreptitiously substituted for signature.  To answer the second modified certified question, we hold that the six-year statute of limitations under HRS § 657-1(4) applies to claims that a deed was procured by fraud of the type that does not render it void ab initio, e.g., fraud in the inducement and constructive fraud.  To answer the third modified certified question, we hold that the statute of limitations begins to run

on a grantor's claim that a deed was procured by fraud of the type that does not render it void ab initio when the grantor discovers, or reasonably should have discovered, the existence of the claim or the person liable for the claim, as discussed in this opinion.[11]

| | |
|---|---|
| Jade Lynne Ching<br>for appellant<br>Kulana Partners LLC | /s/ Mark E. Recktenwald<br><br>/s/ Paula A. Nakayama |
| Ryan H. Engle,<br>Georgia Anton, and<br>Eric B. Levasseur,<br><u>pro hac vice</u>,<br>for appellant<br>Fidelity National Title<br>& Escrow of Hawaii, Inc. | /s/ Sabrina S. McKenna<br><br>/s/ Richard W. Pollack<br><br>/s/ Michael D. Wilson |
| Timothy Hogan<br>for appellee | |

---

[11] Our opinion is limited to answering the certified questions as reframed by this court, and does not address alternate grounds identified in the federal district court's January 10, 2014 order.